# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 15-CV-23596-MORENO/O'SULLIVAN

**JEANETTE MONTEJO,**

      Plaintiff,

v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social Security,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on the Plaintiff's Motion for Summary Judgment with Supporting Memorandum of Law (DE# 23, 4/25/2016) and the Defendant's Motion for Summary Judgment with Supporting Memorandum of Law (DE #24, 5/25/2016). The plaintiff seeks reversal of the Social Security Administration's denial of Supplemental Security Income (hereinafter "SSI") Benefits. In the alternative, the plaintiff requests a remand for further administrative proceedings. The complaint was filed pursuant to the Social Security Act, 42 U.S.C. §405(g) (hereinafter "Act"), and is properly before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration (hereinafter "SSA"). This matter was referred to the undersigned by the Clerk's Notice of Magistrate Assignment (DE# 4, 09/25/15). Having carefully considered the filings and applicable law, the undersigned recommends that the Administrative Law Judge's (hereinafter "ALJ") decision be upheld, that the Defendant's Motion for Summary Judgment (DE #24 , 05/25/2016) be **GRANTED**,  and that the Plaintiff's Motion for Summary Judgment (DE #23, 4/25/2016) be **DENIED**, in accordance with

the following Report and Recommendation.

## PROCEDURAL HISTORY[1]

On February 23, 2012, the plaintiff filed an application for Title XVI Social Security Income (SSI). (Tr. 289-298).  The plaintiff's application was denied at the administrative level on March 14, 2012, and again on June 25, 2012. (Tr. 158-169,170-186). On January 16, 2014, the administrative hearing was held and testimony was taken. (Tr. 40-64). On April 11, 2014, the Administrative Law Judge (ALJ)  issued an opinion that the plaintiff had not been under disability since the date the application was filed, February, 16, 2012. (Tr. 14-39). The ALJ found that the plaintiff retained the residual functional capacity (RFC) to perform a reduced range of light work (Tr. 27). As a result of the RFC,  the ALJ determined that the plaintiff was capable of returning to her past work as a "day worker and bakery worker," and that the plaintiff was not disabled within the meaning of the Vocational Rule 203.28 . (Tr. 34-35). The ALJ's decision became final when the Appeals Council affirmed the ALJ's decision, which became the final decision of the commissioner and subject to judicial review under 42 U.S.C.§405 (Tr.1-8).

The plaintiff had a prior title XVI application that was filed on July 16, 2008, and alleged an onset date of September 1, 1985. A hearing was held regarding that application on March 23, 2011. At that hearing, the onset date was amended to January 1, 2009. (Tr. 133). A decision finding no disability was issued on July 1, 2011, regarding that application. (Tr. 130-151). The

---

[1] All references to "Tr." refer to the transcript of the social Security Administration record filed on December 28, 2015, See, Social Security Transcripts (DE# 15, 12/28/15). Moreover, the page numbers refer to those found on the lower right hand corner of each page of the transcript, as opposed to those assigned by the courts electronic docketing system or any other page numbers that may appear.

appeals council denied the request for review on October 14, 2011. (Tr. 152-157).

**FACTS**

I. <u>Plaintiff's Background</u>

The plaintiff is a Spanish-speaking U.S. citizen born February  20, 1976. (Tr. 289). The plaintiff is currently forty years old, divorced, and was thirty-six years old on the date her Title XVI application was filed on February 23, 2012. ( <u>Id</u>.). On August 22, 1985, (when the plaintiff was nine years old) the plaintiff underwent an intelligence test that revealed she had an I.Q. score of 46, placing her in the mentally deficient range of ability. (Tr. 417). The plaintiff obtained a 12th grade special education diploma from Hialeah High School on June 15, 1995. (Tr. 318, 322). The plaintiff's high school transcript shows that the plaintiff obtained a special education diploma, that she did not take any regular classes, that she only took Exceptional Student Education (ESE) classes and ESE on-the-job training classes, and that she repeated the ninth grade. (322-323). At the time of receiving her diploma, the plaintiff's I.Q. was 49. (Tr. 319).

The plaintiff has twenty-five weekly hours of personal care assistance from an agency (Tr. 463) and someone comes to her home to help with cleaning, laundry, and shopping. (Tr. 383-86). The plaintiff's social worker, Jose Carbonell, helps the plaintiff manage her money and the plaintiff takes public transportation with assistance. (Tr. 459,461-63). On a typical day the plaintiff says she wakes up and waits for her sister to take her kids to school. (Tr. 385). Occasionally, the plaintiff will drive her kids to school herself. (Tr. 383). The plaintiff also has in-home services come to her household to help assist her in taking proper care of her children. (<u>Id</u>.). The plaintiff also indicates that she receives physical assistance, prompting and supervision with her personal needs, grooming, and reminders in taking her medicine. (Tr. 384).

On March 21, 2011, the plaintiff underwent a psychological consultative evaluation with intelligence testing performed by Dr. Davidson. (Tr. 459-467). The plaintiff's I.Q. score was 42, and the plaintiff was assessed with moderate mental retardation and schizoaffective disorder. (Tr. 462-464). The plaintiff has a social worker named Jose Carbonell who accompanies the plaintiff during her medical evaluations. (Tr. 362). At the time of the medical examination with Dr. Davidson, the plaintiff was working approximately 25 hours a month as a self-employed housekeeper (Janitor) (Tr. 459). Based on function reports conducted by the plaintiff's physician, Dr. Davidson, on March 4, 2012, and May 9, 2012, the physician stated that the plaintiff cannot follow written or spoken instructions because she has limited attention to details and requires continuous prompting and demonstration. (Tr. 341, 387). The plaintiff has past relevant work experience as a self-employed janitor, a Commercial Protective Services security guard (CPS), and a bakery worker. (Tr. 353-356). Initially, the plaintiff reported that she was a self-employed janitor, working three hours per day, two days per week, and earning $10.00 per hour in income. (Tr. 354). The plaintiff later reported and testified, on March 4, 2012, that she was a class D security guard for CPS Security Service, that she worked eight hours per day, five days a week, and earned $8.00 per hour. (Tr. 355). The plaintiff then testified that in 1999 she worked at a bakery at a Winn Dixie supermarket. (Tr. 336). The plaintiff testified in a function report conducted on May 19, 2012, that when she worked at Winn Dixie, she worked in the bakery six hours per day, three days per week, and earned $5.50 per hour. ( Id.). Based on a work history report completed with the assistance of Mr. Carbonell, the plaintiff described her duties as placing bakery goods on the sales floor in the company of another co-worker. The plaintiff also placed price stickers on the goods and washed tray utensils. (Tr. 353-360). The plaintiff demonstrated

4

significantly low progress while being exposed to job development activities when working as a security guard and bakery staff member. (Tr. 360). The plaintiff was "laid off" from her job at Winn Dixie and her job as a security guard because she was unable to be on time, complete her duties, or sustain her workload. (Tr. 342, 388).  The plaintiff's social worker, Jose Carbonell, completed a Function Report on March 8, 2012, in which he indicated that he provides 20 hours of services to the plaintiff and that he provides the plaintiff with training on job development during those hours.  (Tr. 362).  The form further indicates that the plaintiff has in home support services and that she is provided support to accomplish activities of daily living (ADL). (Tr. 363). Those forms conflict with the plaintiff's prior testimony that she stopped working with the security company due to pregnancy and that her bakery job ended because the bakery cut hours and did not want to hire any more. (Tr. 97-100). According to a function report completed on March, 4 2012, by Jose Carbonell, the plaintiff also stated she does not handle stress or changes well. (Tr. 342, 384-88).

II. Plaintiff's Mental and Physical Impairments

The plaintiff alleges severe impairments such as chronic back pain syndrome, asthma, schizoaffective disorder-depressed type, and intellectual deficiency. (Tr. 464).  The plaintiff's non-serve impairments are migraine headaches and obesity. (Tr. 445,459).

III. Medical Evidence

On August 22, 1985, when the plaintiff was nine years old she underwent an intelligence test. The plaintiff's full scale I.Q. Score was 46 at that time. (Tr. 417). The test was conducted by Ana A. Rivas-Vazques, who determined that the plaintiff's score placed her in the mentally deficient range of intellectual functioning. (Tr. 417).  On November 17, 1994, the year before the

5

plaintiff graduated high school with a special education diploma, the plaintiff's I.Q. Score was 49. (Tr. 319).

### A. Dr. Davidson

As part of the plaintiff's prior application, Dr. Davidson conducted a psychological consultative evaluation with I.Q. testing of the plaintiff on March 21, 2011. (Tr.459-467). In the report, Dr. Davidson, indicated that the plaintiff appeared to have sufficient personal hygiene and that her grooming was adequate. (Tr. 463). The plaintiff did not use any assistive devices. (Id.). The plaintiff's motor behavior was normal and her eye contact was appropriate. (Tr. 461). The plaintiff's speech was both intelligible and fluent. ( Id.). The quality of the plaintiff's voice was clear, and her expressive language and receptive language were both adequate. (Id.). The plaintiff's thought processes were coherent and goal directed with no evidence of delusions, hallucination, or disordered thinking. ( Id.). According to Dr. Davidson, the plaintiff manages money with the assistance of her social worker. (Id.). The plaintiff reportedly has a driver's license, but does not drive due to medication side effects. (Id.). The plaintiff reportedly takes public transportation with assistance. (Tr. 463). Lastly, Dr. Davidson stated that vocationally, the claimant appears to be capable of following, understanding, and remembering simple instructions and directions with prompting and repetition. (Id.). The plaintiff appears to be capable of performing simple mental tasks with supervision. (Id.). The plaintiff also appears to be capable of maintaining attention for simple tasks, but her concentration for tasks is limited. (Id.). In addition, the plaintiff appears capable of regularly attending to simple routine tasks and maintaining a simple schedule with support. ( Id.). The plaintiff further appears to be capable of learning new tasks and to have the ability to relate to and interact appropriately with others, with the assistance of psychotropic

6

medication. (Tr. 463) The plaintiff also appears to be capable of dealing appropriately with mild

stress, with the assistance of psychotropic medication. (Id.). According to Dr. Davidson, the results

of the examination appeared to be consistent with cognitive and psychiatric problems, and may

significantly interfere with the plaintiff's ability to function on a daily basis. (Id.). Dr. Davidson

recommended that the plaintiff continue with psychological and psychiatric treatment as currently

provided. (Tr. 465-66). Dr. Davidson opined that the  prognosis was good, and Dr. Davidson hoped

that with continued intervention and support, the plaintiff would find symptom relief and maximize

her abilities. (Tr. 464). At that time, the plaintiff was diagnosed with schizoaffective disorder,

moderate mental retardation, and self reported frequent back pain. (Tr. 464).

### B. Dr. Hernandez-Chaple

The plaintiff was treated by psychiatrist Dr. Hernandez-Chaple from March 7, 2012,

through November 12, 2013, for her alleged schizoaffective disorder. (Tr. 469).  According to Dr.

Hernandez-Chaple the disorder became complicated by the plaintiff's underlying intellectual

deficiency. (Tr. 469, 509-521, 522-526).  On June 10, 2013, Dr. Hernandez- Chaple completed a

form titled Medical Assessment of Ability to do Work Related Activities (Mental) regarding the

plaintiff. (Tr. 506-508).  On January 8, 2014, Dr. Hernandez- Chaple also completed a form titled

Medical Assessment of Ability to do Work Related Activities (Mental) regarding the plaintiff.  (Tr.

527-530). The forms are designed to help "determine the individual's ability to do work-related

activities on a day-to-day basis in a regular work setting."  (Tr. 527, emphasis in the original).  In

both forms, Dr. Hernandez-Chaple stated that the plaintiff had poor to no ability to make

professional, occupational, social, or personal adjustments secondary to her chronic cognitive

impairments/intellectual deficiency. (Id.). Based on the assessments conducted by  Dr. Hernandez-

Chaple, the plaintiff's ability to: (1) follow work rules; (2) relate to co-workers; (3) interact with the public; (4) use judgment; (5) handle work stress; (6) interact with a supervisor; (7) function independently; and (8) maintain attention/concentration, were all poor to none. (Tr. 527). Dr. Hernandez-Chaple also discovered through the assessments of the plaintiff, that the plaintiff's ability to: (1) understand, remember and carry out complex job instructions; (2) understand, remember and carry out detailed, but not complex job instructions; and (3) understand, remember and carry out simple instructions, were all poor to none. (Tr. 528-29). Dr. Hernandez-Chaple determined that the plaintiff had an intellectual disability, a digressive thought process, and hallucinations. (Tr. 528). Dr. Hernandez-Chaple determined that the plaintiff's ability to: (1) to maintain personal appearance; (2) behave in an emotionally stable manner; (3) relate predictability in social situations; and (4) demonstrate reliability, were all poor to none. (Id.). Dr. Hernandez-Chaple further determined that the plaintiff was unable to understand or comprehend simple instructions. (Id.). Dr. Hernandez-Chaple also determined that the plaintiff was unable to tolerate minimal levels of stress, had poor social interactions, had periodic psychosis, had delusions, and that the plaintiff had an intellectual deficiency with an I.Q. of 46. (Tr. 530). Dr. Hernandez-Chaple noted that the plaintiff suffered from schizoaffective disorder, the depressed type. (Tr. 530). Dr. Hernandez-Chaple opined that the plaintiff suffered from an affective psychotic disorder with an effective component. (Tr. 530).

On June 5, 2012, the plaintiff underwent a physical consultative evaluation performed by Dr. Daviglus. (Tr. 499-504). The doctor determined that there were four main problems with the plaintiff. (Tr. 499). Dr. Daviglus noted that the plaintiff suffers from back pain across her lumbar area that was derived from delivering her children. The pain is sporadic and sometimes the plaintiff

get spasms of the lumbar spine, especially when she does heavy lifting around her household. (Id.).
According to Dr. Daviglus, the plaintiff suffers from asthma, and has had several asthma attacks
since childhood. (Id.). Dr. Daviglus also noted that the plaintiff has a history of having migraine
headaches for number of years. (Id.).  The plaintiff's headaches of a severe nature, cause nausea,
vomiting, and severe dizziness. (Id.).  Moreover, Dr. Daviglus noted that the plaintiff has a history
of depression starting in 2006 and that the plaintiff  has had difficulty in coping and in taking care
of her children. (Id.).  The plaintiff had difficulty working as a security officer and was unable to
handle the stress, so she quit working in 2007.[2]  Doctor Daviglus' report notes that the plaintiff
completed the 12th grade in school (Tr. 57), that the plaintiff is aware of the country's
governmental structure and leaders but does not know who the governor of the state of Florida is
nor does she know the county where she lives. (Tr. 58). The plaintiff was able to name three cities
and two states, but the plaintiff was not able to complete a two digit calculation. (Id.).

   IV. The Vocational Expert Testimony

   The Vocational Expert, hereinafter (VE), Christina Fannin Morrison, testified at the
plaintiffs ALJ's hearing. (Tr. 59). The ALJ posed a hypothetical to the VE with a person of the
same age, work experience, and education as the plaintiff and listed some abilities of the
hypothetical person. (Tr. 59-60). The VE testified that under the ALJ's hypothetical, the plaintiff
could perform her past work as a day worker and bakery worker. (Tr.60). The VE also identified
other occupations that the plaintiff could perform, including: a hand-packager; a linen room

---

   [2] This information is contradictory to the information the plaintiff provided during the
hearing held before the ALJ, Lornette Williams, on March 23, 2011.  During that hearing, the
plaintiff testified the reason she stopped working full-time as a security guard was only because
she became pregnant, and she tried to return to her job after the pregnancy, but the job was no
longer available. (Tr. 97-100).

attendant; and a day-room attendant. (Tr. 61-62).

In describing to the ALJ the vocational and skill level of each labor position the plaintiff has held in the past, the VE incorporated the vocational and skill level into those descriptions. (Id.). A bakery worker for Winn Dixie (920.587-018.) was an SVP[3] of 2 and medium. (Tr. 56).  The VE testified that the plaintiff only had to lift up to ten pounds when working in the bakery at Winn Dixie. (Id.).  The plaintiff was lifting trays and bake goods while working at Winn Dixie. (Tr. 57-58).

The plaintiff's job as a self-employed housekeeper, which is considered a day worker, (301.687-014) was an SVP of 2 and medium. (Tr. 57). According to the VE's work file, the plaintiff stated that she was lifting up to ten pounds max, a light level to lift. (Tr. 58). The plaintiff's job as a security guard (372.667-034), was an SVP of 3 and light. (Tr. 58). After providing the aforementioned information -to the ALJ, the VE explained her basis of her knowledge for interpreting the vocational and skill level of the labor positions the plaintiff has held in the past. (Id.). The VE explained to the judge that she is familiar with the jobs that exist in the United States and Florida "through my education and my work experience as a vocational consultant conducting labor market surveys, job analysis and doing job placements working for employers." (Tr. 59).

Thereafter the ALJ asked the VE a number of hypothetical questions to determine the plaintiff's ability to work. (Tr. 59). The ALJ began by stating the following:

---

[3] The SVP is known as the specific vocational preparation, it is the amount of time required by a typical worker to learn the techniques, acquire the information, and develop the abilities needed for average performance in a specific work situation. (20 CFR 656 .3).

Q:  . . . . Assume a hypothetical claimant of the same age, education, and work experience as this claimant who is able to do the following: occasionally lift, push, pull and carry 50 pounds and frequently 25 pounds. Is able to stand and/or walk with normal breaks for six hours in an eight-hour day and sit with normal breaks six hours in an eight-hour day. Also assume that such a hypothetical claimant should not climb ladders, ropes or scaffolds with no order establishing postural limitations. Assume that there is no established visual manipulative or communicative limitations and environmentally assume that such hypothetical claimant should avoid even moderate exposures to dust, gases, odors, poor ventilation and other pulmonary irritants. Also should avoid working at unprotected heights. Mentally assume the following. Assume that such hypothetical claimant would be able to understand, remember and carry out short simple instructions, sustain attention and concentration for two hour periods of time in an eight hour day and short simple instructions. Able to use judgment in making work decisions related to short simple instructions, respond appropriately to supervision in usual work situation. Requires occupation with only occasional coworker contact. Set routine and procedures and few changes during the work day. Is able to interact appropriately with the public but limited to jobs which do not require frequent recurrent contact with the general public. No fast pace or production time to go to work. Is able to maintain regular attendance and be punctual with customer intolerance's and perform activities within schedule.  Do you have an opinion as to whether such as hypothetical claimant would be able to perform any of the claimants past work?

(Tr.59-60).

In response to the ALJ's hypothetical questioning, the VE testified:

The position as a day worker, I believe she still would be able to perform. And the bakery worker she would typically–just working on dishwashing, taking care of the bakery utensils so I believe she could do that job too. It wouldn't require more then occasional contact with her coworkers and she didn't have to deal with the public."

(Tr. 60).

The VE continued that a "security guard would exceed the —the mental limitations." (Id.).

The VE also testified that she didn't believe the bakery worker position would be affected by the environmental limitations, because the plaintiff wasn't doing the baking. The VE noted:

11

> She was in a — it's in a retail establishment not, like, a production, like, a warehouse or mass production. So I don't think that it would exceed the moderate exposure and according to the dot it does not.

( Tr. 61).

Regarding the plaintiff's potential job as a hand packager, (520.587-018), the VE indicated that type of job is an SVP of two and medium. The VE noted:

> There's approximately 20,000 jobs nationwide, 1,000 in Florida and 200 in the tri-county area. There's linen room attendant.

(Tr. 61).

Following the response by the VE to the ALJ , the VE was examined and questioned by the plaintiff's attorney, Ms. Henning. The following interaction transpired between the VE and the plaintiff's attorney.

> Attorney: Assuming a hypothetical claimant who is off task 15 percent or more of each day that would prelude all types of employment?"

> VE: Yes.

> Attorney: Hypothetical claimant were – were to miss more than three days a month for medical problems or medical conditions that would preclude all types of work?"

> VE: It would.

> Attorney: If hypothetical claimant had no useful ability to follow work rules and relate to coworkers, deal with the public, use judgement, interact with supervisors, deal with work stress, function independently and maintain attention and concentration that would preclude all type of employment?

VE: It would.

Attorney: And if the hypothetical claimant would have no useful ability to understand, remember and carry out simple complex or detailed job instructions, that would preclude all types of employment?

VE: It would.

Attorney: And if the hypothetical claimant would have no useful ability to maintain personal appearance, behave in an emotionally stable manner, relate predictably in social situations and restrain reliability that would preclude all types of employment?

VE: It would.

(Tr. 61-63).

V. <u>The Administrative Hearing and the Plaintiff's Testimony</u>

A hearing was held before the ALJ on January 16, 2014. (Tr. 40).  At the hearing, the plaintiff gave testimony about her personal history, work history, as well as her alleged physical and mental impairments. (Tr. 43-45). The plaintiff also gave testimony regarding  her mental disability stemming from schizophrenia which impacts her memory or concentration, attention, pace and persistence in her daily life. (Tr. 44-45). The plaintiff testified that she "spends days sometimes watching TV  . . . or sleeping because of the pills she takes make her sleepy." (Tr. 46-47).  The plaintiff also testified that she took pills the day before the hearing. (<u>Id.</u>).  At the hearing, the VE classified the plaintiff's past work history as a day worker for Winn Dixie bakery, a house keeper, and a security guard, which all consists of work with medium physical demand and SVP of

two. (Tr. 56). During the hearing, the ALJ proposed a hypothetical mirroring the plaintiff's age, education, and work experience. (Tr. 58). The ALJ added that the plaintiff could only perform the basic demands of unskilled work, carry out simple tasks and engage in occasional to minimal social interaction. (Tr. 58-59). Based on this hypothetical, the VE testified that such a person could not perform the plaintiff's past work as a security guard because it involved a high level of social interaction, exceeding the plaintiffs mental interaction. (Tr. 60). As noted above, the VE proposed that the plaintiff could be a hand packager, for which 1,000 jobs exist in Florida, and 200 in the tri-county area. (Tr. 61).  Also as noted above, the VE also recommended the position of a linen room attendant, for which 1,100 jobs exist in Florida, and 400 in the tri-county area. (Tr. 61-62).

## THE ALJ'S DECISION-MAKING PROCESS

"Disability" is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can last for a continuous period of not less than twelve months...." 42 U.S.C. §§ 416(I); 423(d)(1); C.F.R. § 404.1505 (2005). The impairment(s) must be severe, making the plaintiff "unable to do his previous work... or any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(1); 20 C.F.R. § 404.1505-404. 1511 (2005).

To determine whether the plaintiff is entitled to disability benefits, the ALJ must apply a five-step analysis. 20 C.F.R. § 404.1520(a)-(f). The ALJ must first determine whether the plaintiff is presently employed or engaging in substantial gainful activity. If so, a finding of non-disability is made and the inquiry ends.

Second, the ALJ must determine whether the plaintiff suffers from a severe impairment or a

14

combination of impairments. If the plaintiff does not, then a finding of non-disability is made and the inquiry ends.

Third, the ALJ compares the plaintiff's severe impairments to those in the listings of impairments located in Appendix I to Subpart 404 of the Code of Federal Regulations. 20 C.F.R. § 404.1520 (d), Subpart P, Appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the plaintiff's ability to perform other work. See Gibson v. Heckler, 762 F.2d 1516, 1518 n.1 (11th Cir. 1985).  If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R.  § 404.1520(d).

Fourth, the ALJ must determine whether the plaintiff has the "residual functional capacity" to perform his or her past relevant work. "Residual functional capacity" (hereinafter "RFC") is defined as "what you can do despite your limitations." 20 C.F.R. § 404.1545(a)(1). This determination takes into account "all relevant evidence," including medical evidence, the claimant's own testimony and the observations of others. (Id.) If the plaintiff is unable to perform his or her past relevant work, then a prima facie case of disability is established and the burden of proof shifts to the Commissioner to show at step five that there is other work available in the national economy which the plaintiff can perform. 20 C.F.R. § 404.1520(e); see Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991) (The claimant bears the initial burden of proving that he is unable to perform previous work).

Fifth, if the plaintiff cannot perform his or her past relevant work, the ALJ must decide if

15

he or she is capable of performing any other work in the national economy.

## THE ALJ'S FINDINGS

In this matter, at step one, the ALJ determined that the plaintiff was not employed, and thus not engaged in substantial gainful activity. (Tr.  22). This allowed the ALJ to move to step two, where she determined whether the plaintiff had a severe impairment or combination of impairments.  The ALJ found that the plaintiff's alleged impairments of: chronic back pain syndrome, asthma, schizoaffective disorder, depressed type, and intellectual deficiency were severe.  (Tr.22).  However, none of the impairments or combination of impairments met the medical severity of those impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d).  (Tr. 23).

At step three, the ALJ found that the plaintiff's medically determinable mental impairments of schizoaffective disorder, and intellectual deficiency were not listed impairments located in Appendix I to Subpart 404 of the Code of Federal Regulations. 20 C.F.R. § 404.1520 (d), Subpart P, Appendix I. (Tr. 29.) In the decision, the ALJ assessed the "paragraph B" criteria, as required by disability regulations, in order to determine whether the plaintiff's mental impairment of schizoaffective disorder, depression type, was severe enough to satisfy the listed impairments. (Tr. 23). With regard to the plaintiff's activities of daily living (ADL) and the plaintiff's social functioning, the ALJ found that the plaintiff had no more than a moderate restriction. (Tr. 24). The ALJ also concluded that the plaintiff had moderate difficulties with respect to concentration, persistence or pace. (Tr. 30). In addition, the ALJ determined that the plaintiff had not experienced any episodes of decompensation for an extended duration. (Tr. 25).  In each of the areas of the

"paragraph B" criteria, the ALJ cited the plaintiff's testimony from the administrative hearing or information contained in medical records to support her finding. (Tr. 26). According to the ALJ, because the plaintiff's mental impairments do not cause at least two marked limitations or a marked limitation and repeated episodes of decompensation, each of extended duration, as required by "paragraph B", the "paragraph B" criteria were not met. (Tr. 24). Moreover, the ALJ also considered whether the plaintiff's mental impairments satisfied the "paragraph C" criteria. (Tr. 25). The ALJ found that the plaintiff did not have a medically documented history of chronic affective disorder, lasting at least two years, that has caused more than a minimal limitation of ability to do basic work activities. (Tr. 31).

At step four, the ALJ carefully considered the entire record, and found that the plaintiff has the residual functional capacity (RFC) to perform medium work as defined in 20 CFR 416.967(C), but the plaintiff should avoid climbing ladders, ropes, or scaffolds. The ALJ stated:

> [t]here are no other established postural limitations and no established visual, manipulative, or communicative limitations. Environmentally, the claimant should avoid concentrated exposure to dusts, fumes, gases and other pulmonary irritants. In addition, she should avoid working at unprotected heights. Mentally, the claimant is able to understand, remember, and carry out short simple instructions. She is able to sustain attention and concentration for 2-hour periods at a time and for 8 hours in the workday on short simple instructions. She can use judgment in making work decisions related to short, simple instructions and is able to respond appropriately to supervision and usual work situations. The claimant requires an occupation with only occasional co-worker contact and with set routine and procedures and few changes during the workday. The claimant can interact appropriately with the public, but is limited to jobs which do not require frequent, recurrent contact with the general public. The claimant is limited to jobs which do not require fast-paced production work. She can maintain regular attendance and

be punctual within customary tolerances and can perform activities within a schedule.

(Tr.27).

At step five, the ALJ determined that the plaintiff could perform past relevant work as a day worker and bakery worker, because such work does not require the performance of work-related activities precluded by the plaintiff's RFC (20 CFR 416.965). (Tr. 33). The ALJ also determined that the plaintiff had the ability to work as a day laborer, hand packager, and housekeeper. (Id.). In making those determinations, the ALJ considered all the medical records in the transcript and relied on the testimony of the VE, which the ALJ found was consistent with the information contained in the Dictionary of Occupational Titles. (Tr. 37).

## STANDARD OF REVIEW

The Court must determine if it is appropriate to grant either party's motion for summary judgment. Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g) (2006); see Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996) (holding that the reviewing court must not re-weigh evidence or substitute its discretion). On judicial review, decisions made by the defendant, the Commissioner of Social Security, are conclusive if supported by substantial evidence and if the correct legal standard was applied. 42 U.S.C. § 405(g) (2006); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999). Substantial evidence is more than a scintilla, but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

18

Substantial evidence is relevant evidence a reasonable person would accept as adequate to support the ALJ's conclusion. Richardson, 402 U.S. at 401. In determining whether substantial evidence exists, "the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).

The restrictive standard of review, however, applies only to findings of fact. No presumption of validity attaches to the Commissioner's conclusions of law, including the determination of the proper standard to be applied in reviewing claims. See Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991) ("Commissioner's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."); accord Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The reviewing court must be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. See Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993). The court may not, however, decide facts anew, re-weigh evidence or substitute its judgment for that of the ALJ, and even if the evidence weighs against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996); see also Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989). Factual evidence is presumed valid, but the legal standard applied is not. See Martin, 894 F.2d at 1529. The Commissioner must apply the correct legal standard with sufficient reasoning to avoid reversal. Id.

**LEGAL ANALYSIS**

The plaintiff objects to the ALJ's evaluation of the plaintiff's  physical and mental conditions pertaining to her schizoaffective disorder-depressed type, and intellectual deficiency. (Pl.'s Motion for Summ. J. at 6 ).  The plaintiff contends that the ALJ's RFC determination is not based on a full and fair evaluation of the case record, including the medical and opinion evidence. (Id. ). The plaintiff asserts that the ALJ's RFC determination was erroneous because the ALJ found that: (1)  the plaintiff did not meet or equal a medical listing; (2) the plaintiff's low IQ score was inconsistent with her ADL or her ability to perform work activities in the past without accommodations; (3) the plaintiff graduated high school and worked in the past; and (4) the testimony of her case worker, Jose Carbonell, merited little weight and the opinions of her treating physicians merited little weight. (Pl.'s Motion for Summ. J. at 10-14). The undersigned finds that the ALJ's findings are substantially justified by the record and that the ALJ's decision should be affirmed. See Miles, 84 F.3d at 1400; See also Baker, 880 F.2d at 321.

**I. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S FINDING THAT THE PLAINTIFF DID NOT MEET THE MEDICAL LISTING 12.05**

The plaintiff asserts that the ALJ erred when she found that the plaintiff's schizoaffective disorder, depressed type, and intellectual deficiency did not meet or equal the medical severity of one of the listed impairments found in Appendix I of the Regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). (Pl.'s Motion for Summ. J. at 9). The plaintiff contends that the ALJ erred when she found the plaintiff was not disabled in that she did not meet or equal medical listings 12.05 A, B, C, or D, because her I.Q. of 42 was inconsistent with plaintiff's ADL, and that the plaintiff had graduated high school, and had worked in the past. (Pl.'s Motion for Summ. J. At 13).

20

To satisfy the "paragraph B" criteria of the medical listings, the mental impairment must result in at least two of the following: 1) marked restriction in activities of daily living; 2) marked difficulties in maintaining social functioning; 3) marked difficulties in maintaining concentration, persistence, or pace; or 4) repeated episodes of decompensation, each of extended duration. See 20 C.F.R. pt.404, subpt. P, app. 1, § 12.05. More specifically, in order to meet a medical listing under 12.05, a claimant must first show that her impairment(s) satisfied the diagnostic description for intellectual disability found in the introductory paragraph of the listing 20 C.F.R. Pt. 404, Subt . P App. 1 § 12.00(A). Then the claimant must present sufficient evidence of any one of the four sets of criteria under listing 12.05. 20 C.F.R. Pt. 404, Subt. P, App. 1 § § 12.00(A), 12.05. At the time of the ALJ's decision in May 2013, medical listing 12.05 stated in relevant part:

> *Intellectual disability:* Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period i.e. the evidence demonstrates or supports onset of the impairment before age 22. The level of severity for this disorder is met when the requirements in A ,B, C, or D are satisfied.

> A.   Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

> OR

> B.   A **valid** verbal, performance, or full Scale I.Q. of 59 or less;

> OR

> C.   A **valid** verbal, performance or full scale I.Q. of 60 through 70 and a

physical or other mental impairment imposing an additional and significant
work-related limitation of function;

OR

D.      A **valid** verbal, performance or full scale IQ of 60 through 70 resulting in at
        least two of the following 1. Marked restriction of activities of daily living;
        or 2. Marked difficulties in maintaining social functioning; or 3. Marked
        difficulties in maintaining concentration, persistence, or pace; or 4. Repeated
        episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05 (bold added).

The plaintiff believes there is substantial evidence to establish that she meets medical

listing 12.05(B) because there is evidence of significantly subaverage general intellectual

functioning with deficits in adaptive functioning manifested during the development period. (Tr.

110-118).  Specifically, the plaintiff required special education, she had an I.Q. score of 46 when

she was nine years old, and an I.Q. score of 49 in high school. (Tr. 318-22). A recent examination

of the plaintiff's I.Q. conducted by Dr. Davidson concluded that the plaintiff had an IQ of a 42. (Tr.

462). The plaintiff indicates she also meets the medical listing 12.05(C) because she has the severe

impairments of chronic lower back syndrome, asthma, and schizoaffective disorder, depressed

type, as acknowledged by the ALJ. (Tr. 464).

The plaintiff supports her assertion by citing to the case of Ambers v. Heckler, 736 F. 2d

1467 (11th Cir. 1984). The Ambers case indicated that " a claimant whose impairment meets a

listing is disabled regardless of the fact that he or she worked in the past with impairments or could

return to past work." *Ambers*, 736 F. 2d  at 1469-70.  In Ambers, the Eleventh Circuit found that a

mentally retarded[4] claimant who was gainfully employed in the past is disabled upon the cessation of employment. (Id.). In further support of her position that she met listings 12.05(B) and (C), the plaintiff cited to a Northern District of Alabama case in which the court faulted an ALJ's decision that relied on the plaintiff's ability to perform her past jobs even though that plaintiff satisfied the requirements of 12.05(C). Vaughn v. Astrue, 494 F. Supp. 2d 1269, 1274 (N.D. Ala. 2007). The court in Vaughn concluded that the ALJ misapplied the law because once a plaintiff is found to suffer from a listed  impairment, vocational factors are irrelevant. (Id.).

The ALJ in this matter considered the evidence in this case under listing 12.05 and acknowledged that the plaintiff had a full scale I.Q. score of 42 and a verbal comprehension score of 51 during a March 2011 consultative examination with Diana Davidson, Ph. D and that Dr. Davidson diagnosed the  plaintiff with moderate mental retardation (Tr. 26 -29, 462-64). As noted above and by the ALJ in the opinion,  (Tr. 25-26), the diagnostic description for listing 12.05 requires "significantly subaverage general intellectual functioning with deficits in adaptive functioning..." Crayton v. Callahan, 120 F. 3d 1217, 1219-20 (11th Cir. 1997). Adaptive functioning includes a claimants's "effectiveness in areas such as social skills communication, and daily living skills, and how well the person meets the standards of personal independence and social responsibility expected of his or her age by his or her cultural group." Heller v. Doe, 509 U.S. 312, 329, 113 S. Ct. 2637, 2647 (1993) ( describing mental retardation in case challenging the constitutionality of state's involuntary commitment procedure); See also, Program Operations

---

[4]As of September 3, 2013, the Disability commission replaced the term " mental retardation" with "intellectual disability" in the listing, but the change did not have significant affect on the substance or requirements of the listing. See Change in Terminology: "mental retardation" to "intellectual disability," 78 Fed. Reg. 46,499,46,4501 (Aug 1. 2013).

Manual System (POMS) DI 24515.056(D)(2) (adaptative functioning refers to an " individual's progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age").

The ALJ acknowledged the plaintiff's low I.Q. scores from Dr. Davidson's evaluation, however, the ALJ found that the plaintiff did not meet listing 12.05 because the plaintiff's I.Q. scores were not consistent with her overall level of functioning evidenced in the record. (Tr. 26). The regulations provide that standardized intelligence tests are only part of the overall assessment and that, while such tests are essential, the regulations do not require the ALJ to make a finding of intellectual disability based on I.Q. test result alone.  See 20 C.F.R. pt. 404, subst.. P, app. 1  § 12.00(D) (6)(a-b); Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986) (a valid I.Q. score is not conclusive of meeting listing 12.05 when it is inconsistent with other evidence). An ALJ may properly find that the results of an I.Q. test are incredible, and that listing 12.05 is not satisfied. See Monroe v. Comm'r of Soc. Sec. Admin., 569 F. App'x 833, 835 (11th Cir. 2014).

## II. THE PLAINTIFF'S I.Q. SCORE WAS INCONSISTENT WITH THE PLAINTIFF'S ACTIVITIES OF DAILY LIVING OR HER ABILITY TO PERFORM WORK ACTIVITIES IN THE PAST WITHOUT ACCOMMODATIONS.

The plaintiff noted in a function report completed with the assistance of Mr. Carbonell on March 4, 2012, and May 19, 2012, that she was "laid off" from her positions at Winn Dixie as a bakery employee and her position as a security guard because she was unable to be on time and complete her duties. (Tr. 342) . The plaintiff also stated she could not sustain her workload and that she did not handle stress at work well. (Tr. 388). Mr. Carbonell stated that the plaintiff received on the job training through supported employment coaching, and that the plaintiff receives 20 hours of training a month. (Id.). The plaintiff noted that at her jobs the plaintiff demonstrated significantly

low progress while being exposed to job development activities.  (Tr. 360).

The ALJ noted that the plaintiff worked in the past full time as a security guard without any special accommodations, that the plaintiff stopped working because she became pregnant, and that the plaintiff tried to return to that job after her pregnancy, but the job was no longer available. (Tr. 26). The ALJ also noted that the plaintiff had worked as a self-employed housekeeper (Tr. 26., 97-100). The ALJ detailed that the plaintiff had a driver's license and drove her children to school and herself to appointments on occasion. (Tr. 26, 339, 365). The ALJ further noted that plaintiff lived with and cared for her two minor children (Tr. 26, 45, 383, 463). See O'Neal v. Comm'r of Soc. Sec., 614 F. Pp'x 456, 460 (11th Cir. 2015)(noting evidence such as history of work as a dishwasher without any special accommodation, which the claimant quit only for family reasons, driving and caring for children, supported finding no deficits in adaptive functioning).  Substantial evidence supports the ALJ's determination that plaintiff did not have the adaptive functioning deficits required to meet listing 12.05.

The plaintiff's social worker, Jose Carbonell, completed the forms in which the plaintiff contends that she was previously unable to keep her security and bakery jobs due to cognitive limitations. (Tr. 342, 388).  The forms conflict with the plaintiff's prior testimony that she stopped working with the security company due to pregnancy and that her bakery job ended because the bakery cut hours and did not want to hire any more. (Tr. 97-100). The plaintiff relies on Ambers v. Heckler, 736 F.2d 1467,1469 (11th Cir. 1984), as well as Vaughan v. Astrue, 494 F. Supp. 2d 1269,1274 (N. D. Ala. 2007), in support of her position that case law suggests that the ALJ could not take into consideration the plaintiff's past work to find that the plaintiff did not meet the listing requirement. In Ambers, the court held that an ALJ may not consider the plaintiff's age, education,

or work experience after finding that the claimant had a valid I.Q. score and met or equaled the other proponents of medical listing 12.05. Ambers, 736 F.2d at 1470. In Vaughn, the court stated that once a claimant is found to meet the requirements of the listing, vocational factors are not relevant. Vaughn, 494 F. Supp. 2d at 1274.

Neither the Ambers case nor the Vaughn case addressed whether an ALJ can consider past work in determining adaptive functioning. While the ALJ cannot consider a claimant's work experience after accepting an I.Q. score as valid and finding that the claimant meets listing 12.05, it does not follow that the ALJ cannot use the claimant's work experience in determining whether such experience evidenced the claimant's adaptive functioning and thus, whether the claimant meets listing 12.05 in the first place.  See, e.g., Perkins v. Comm'r, Soc. Sec. Admin ., 553 F. App'x 870, 873-74 (11th Cir. 2014). The ALJ did not err in considering claimant's past work as evidence of adaptive functioning that was not consistent with listing 12.05.

### III. THE ALJ DID NOT FAIL IN DETERMINING THE PLAINTIFF WAS NOT A CREDIBLE WITNESS.

The plaintiff asserted the ALJ erred when she failed to determine the plaintiff was a credible witness because she graduated from a high school special educational program with passing grades. (Tr. 316). To establish a disability based on pain and other symptoms, the plaintiff must show: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). As the defendant notes, "[i]f the objective medical evidence does not confirm the severity of the alleged symptoms but indicates one could reasonably expect the

claimant's impairment to produce his alleged symptoms, the ALJ must evaluate the intensity and

persistence of the claimant's alleged symptoms and their effect on the claimant's ability to work."

(Def.'s Motion for Summ. at 17) (citing 20 C.F.R. § 416.929(c)(1); Wilson, 284 F.3d at 1225-26).

In evaluating the intensity, persistence, and limiting effects of a claimant's alleged symptoms, the

ALJ must determine how credible the claimant's allegations are based on the entire record. See

Wilson, 284 F.3d at 1225. In determining the claimant's credibility, the ALJ must consider: (1) the

claimant's daily activities; (2) the symptoms' location, duration, frequency, and intensity; (3)

precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of

medication taken to alleviate the symptoms; (5) treatment, other than medication, and other

measures used to relieve the symptoms; and (6) other facts concerning functional limitations and

restrictions due to symptoms. See 20 C.F.R. § 416.929(c)(3); see also SSR 96-7p, 1996 WL

374186, at 3. If the ALJ determine's the claimant's subjective testimony is not credible, he must

articulate explicit and adequate reasons for doing so.  See Foote v. Chater, 67 F.3d 1553, 1561-62

(11th Cir. 1995).

The plaintiff graduated from high school with a special education diploma on June 15,

1995. (Tr. 319). The plaintiff was labeled educable mentally handicapped and her high school

transcript shows that she obtained a special education diploma, that she did not take any regular

classes, and that she only took ESE classes and ESE on-the-job training classes. (Tr. 322-23). The

plaintiff has twenty-five weekly hours of personal care assistance from an agency (Tr. 463) and

someone comes to her home to help with cleaning, laundry, and shopping. (Tr. 383-86). The

plaintiff's social worker helps the plaintiff manage her money and the plaintiff takes public

transportation with assistance. (Tr. 459,461-63). On a typical day the plaintiff says she wakes up

and waits for her sister to take her kids to school. (Tr. 385). Occasionally, the plaintiff will drive her kids to school herself. (Tr. 383). The plaintiff also claims that she has in-home services come to her household to help assist her in taking proper care of her children. (Id.). The plaintiff also indicates that she receives physical assistance, prompting and supervision with her personal needs, grooming, and reminders in taking her medicine. (Tr. 384).

The plaintiff acknowledges that she graduated high school with passing grades. (Tr.26, 322-23). The plaintiff seems to argue that the fact she graduated with a special education diploma instead of a regular diploma undermines the ALJ's decision. (Pl's. Br. at 8.) However, when the information regarding the plaintiffs diploma is considered in conjunction other adaptive functioning evidence, the undersigned finds that the ALJ did not err. The ALJ clearly articulated a credibility determination which was supported by substantial evidence in the record, which indicated that the plaintiff had an array of past jobs. (Tr 353). The ALJ referred to Williams v. Astrue, No. 8:11-cv-860-T-JRK, 2012 WL 3264517, at *6 (M.D. Fla. Aug. 9, 2012), which indicated that adaptive functioning abilities such as work history and capability of activities of daily living sufficed to determine a claimant did mot meet listing 12.05 despite having attended special education classes and receiving a special education diploma. See Williams v. Astrue, No. 8:11-CV-T-JRK, 2012 WO 3264517, AT *6 (M.D. Fla. Aug. 9, 2012). Based on the plaintiff's adaptive functioning abilities the ALJ's determination as to the plaintiff's credibility was proper.

## IV. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S DECISION TO AFFORD LITTLE WEIGHT TO THE TREATING PHYSICIAN'S AND CASE WORKER'S OPINIONS.

The plaintiff asserts that the ALJ erred in finding that the testimony/reports of her case worker, Jose Carbonell, and her physician, Dr. Hernandez-Chaple, carried little weight, because

their testimony/reports were inconsistent with the record.  (Tr. 30, 353, 506-530). The ALJ considered and accorded less than controlling weight to the opinion of the plaintiff's treating physician, Dr. Dr. Hernandez-Chaple, because the physician claimed the plaintiff had no useful ability to function in every assessed functional area of daily-living and the physician's testimony contradicted the findings of other physicians. This led Dr. Hernandez-Chaple's testimony to be inconsistent with the record. (Tr. 506-08). In most circumstances, the regulations require that an ALJ give more weight to the opinion of a treating source. See 20 C.F.R. § 404.1527(d)(2); See also MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986), Broughton v. Heckler, 776 F.2d 961-62 (11th Cir. 1985); Hunter v. Comm'r of Soc. Sec., No. 14-14431, 2015 WL 1843050, at *2 (11th Cir. April 23, 2015). The ALJ must accord a treating source opinion controlling weight where it is supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); Roth v. Astrue, 249 F. App'x. 167, 168 (11th Cir. 2007). However, the opinion of a treating source may be given less weight in circumstances when the evidence supports a contrary finding or does not support the opinion given by the source. 20 C.F.R. § 416.927; Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991). The ALJ may discount a treating source's opinion when "good cause exists for not heeding the treating physician's diagnosis."[5] Edwards, 937 F.2d at 583. When controlling weight is not accorded to the treating source opinion, the ALJ must consider the physician's specialization, the length of the treatment relationship, the nature and frequency of examinations, the evidence offered in support of the opinion, and the consistency of that opinion with the record as a whole. 20 C.F.R. § 404.1527(d); Schuhardt v. Astrue, 303 F. App'x. 757, 759 (11th Cir. 2008). Additionally, the ALJ is required to "state with particularity the weight given to different medical opinions and

the reasons therefore." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2006) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987)).

The plaintiff's case worker, Jose Carbonell, claims that the plaintiff was provided 20 hours of supported employment services. (Tr. 362). Mr. Carbonell also claims that the plaintiff's job sustainability is significantly poor because she has difficulties following an effective plan to acquire reliable employment. (Tr. 363). Mr. Carbonell asserted that the plaintiff has behavioral issues, and that she lacks knowledge and skill to maintain a functioning job. (Tr. 363). According to Mr. Carbonell, the plaintiff also requires constant training, prompting and reminding for daily and some household activities. (Tr. 363-69).

The plaintiff's treating physician, Dr. Hernandez-Chaple, treated the plaintiff for schizoaffective disorder, complicated by underlying intellectual deficiency. (Tr. 522-26). Dr. Hernandez-Chaple stated that the plaintiff had poor to no ability to make professional, occupational, social, or personal adjustments secondary to her chronic cognitive impairments of intellectual deficiency. (Tr. 469).

In this matter, the ALJ gave little weight to the case worker's opinions because his testimony of the plaintiff's need for extensive assistance was inconsistent with the record and the case worker was not an acceptable medical source. (Tr. 353-370). In support of her position, the plaintiff points to the evidence and testimony from her social worker, Mr. Carbonell, regarding her contention that the plaintiff meets listing 12.05. (Tr. 32).  Specifically, the plaintiff points to Mr. Carbonell's statements that the plaintiff requires extensive assistance and coaching for her daily activities, caring for her children, managing her finances and looking for employment or completing applications. (Pl.'s Br. At 11-12).  However, Mr. Carbonell is not an acceptable

medical source and his opinion cannot serve to establish an impairment, much less that plaintiff

has an impairment that meets a listing. See 20 C.F.R.  § 416.913(a), (d)(1); Social Security Ruling

(SSR) 06-03p,2006 WL 2329939 at *1-2 (S.S.A. 2006) (opinions from individuals who are not

acceptable medical sources cannot establish that a claimant has an impairment).

According to 20 C.F.R. 416.913(a),  Mr. Carbonell's occupation is not listed as an

acceptable medical source. Furthermore, the ALJ noted that Mr. Carbonell  testified both that the

plaintiff experienced no improvement with treatment, but he also testified that the plaintiff did

experience improvement with treatment (Tr. 32, 55-56). This creates a conflict in Mr. Carbonell's

testimony. (Tr. 353-368). Additionally, Mr. Carbonell began service with the plaintiff in

approximately 2011, but the plaintiff held her position as a security guard beginning in 2007, (Tr.

314) and her children were age five and fifteen at the time of hearing (Tr. 45).

The undersigned finds that the ALJ's conclusion that the plaintiff's ability to function was

not as limited as Mr. Carbonell suggested because the plaintiff was able to obtain and keep a job,

which she quit only due to pregnancy, and that the plaintiff cared for her two children prior to

receiving services, undermining both the plaintiff's and Mr. Carbonell's claims of adaptive

functioning limitations requiring her to need daily assistance. (Tr. 32). The plaintiff has at most

shown some conflicting evidence of which the ALJ was aware, but the Eleventh Circuit has made

clear that the ALJ is in the best position to choose between conflicting evidence. See Wind v.

Comm'r of Soc. Sec., 362 F. App'x 71, 73 (11th Cir. 2005).

In this matter, the ALJ rightfully discounted the treating source's opinion. (Tr. 33, 506).

The ALJ determined that Dr. Hernandez-Chaple's opinions and conclusions were not sufficiently

supported by the plaintiff's adaptive functioning capabilities evidenced in the record. (Id.). The

ALJ determined that Dr. Hernandez-Chaple's opinion supporting the plaintiff's 12.05 medical listing claim was insufficient. (Tr. 33, 527-530).

Dr. Hernandez-Chaple opined that the plaintiff had poor or no useful ability to function in every assessed functional area, stating that the plaintiff was unable to manage her own benefits and that her condition was a lifelong chronic condition, which had lasted since the plaintiff's childhood (Tr. 506-08). A treating source is generally entitled to considerable evidentiary weight.  See, Phillips v. Barnhart, 367 F.3d 1232,1240 (11th Cir. 2004).

The ALJ, may appropriately find good cause to reject a treating source opinion where it is not bolstered by the evidence, where the evidence supports a contrary finding, where the opinion is conclusory, or it is inconsistent with the doctor's own records.  See 20 C. F. R. § 416.927 (C). The ALJ gave Dr. Hernandez-Chaple's opinion less than controlling weight because the ALJ found the opinion unsupported by and inconsistent with the record. (Tr. 30). The undersigned agrees with the ALJ based on the evidence in the record. In support of the ALJ's conclusion, the ALJ noted that Dr. Hernandez-Chaple's opinion that the plaintiff had no useful ability to function in any domain and that her condition was lifelong and chronic was inconsistent with her significant work history in positions without special accommodations. (Tr. 30, 362-369).

The ALJ further noted that part of Dr. Hernandez-Chaple's opinion was for a period of time during which he had not treated the plaintiff because the plaintiff's treatment notes did not extend past November 2013. (Tr. 30, 523). Furthermore, the ALJ found that  Dr. Hernandez-Chaple's opinion was  inconsistent with his treatment records because the treatment records  did not suggest that the plaintiff's condition was such that she was chronically unable to function in every domain given the clinical signs of intact and logical thought process with improvements in

symptomology through treatment. (Tr. 29-30. 517-521).

Ultimately, the ALJ found Dr. Hernandez-Chaple's opinion was inconsistent with the evidence from consultative examiner Dr. Daviglus. (Tr. 32, 509). The examination of Dr. Daviglus included information that the plaintiff had somewhat improved symptoms with treatment and findings that the plaintiff was alert and oriented with only mild memory loss. (Tr. 499-500).  The ALJ also noted that Dr. Hernandez-Chaple largely treated plaintiff for medication adjustments and did not provide the type of treatment one would expect for someone as limited as he opined the plaintiff was limited . (Tr. 33, 469-85).

Even if some of the evidence is against the commissioners's decision, reviewing courts must affirm if substantial evidence supports the decision. See Moore v. Barnhart, 405 F.3d at 1208, 1213 (11th Cir. 2005). The plaintiff has at most shown some conflicting evidence of which the ALJ was aware, but as noted above, the Eleventh Circuit has made clear that the ALJ is in the best position to choose between conflicting evidence. See Wind v. Barnhart, 133 F. App'x 684, 691 (11th Cir. 2005); Bloodsworth v. Heckler, 703 F.2d 1233,1240 (11th Cir. 1983). The Eleventh Circuit established good cause examples for discounting a treating physician's opinion in Davis-O'Brien v. Astrue, 415 Fed. Appx. 137, 139 (11th Cir. 2011). Those good cause examples consist of: (1) lack of evidence; (2) evidence supporting an opposite conclusion; and (3) short, conclusory, or inconsistent findings. (Id.). In accordance with the foregoing, the undersigned finds that the ALJ had good cause for not affording substantial weight to the treating physician's opinions because the opinions of the treating physician were inconsistent with the rest of the record.

## **RECOMMENDATION**

In accordance with the foregoing Report and Recommendation, the undersigned hereby respectfully recommends that the decision of the Commissioner be **AFFIRMED**, that the defendant's Motion for Summary Judgment (DE#24, 05/25/2016) be **GRANTED**, and that the Plaintiff's Motion for Summary Judgment (DE#23, 04/25/2016) be **DENIED**.

The parties have 14 days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with Honorable Federico Moreno, United States District Court Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F. 2d 745 (11th Cir. 1988), cert.  Denied, 488 U.S. 958,109 S. Ct. 397 (1988); RTC v. Hallmark Builders, Inc. 996 F. 2d 1144,1149 (11th Cir. 1993).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this 5th day of July, 2016.

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
United States District Judge Moreno
All counsel of record

34